MARK HAZELBAKER, Corporation Counsel Manitowoc County
You have asked whether a person's attorney-in-fact, relying on a durable power of attorney, may lawfully consent to placement of the person in a nursing home or consent to the provision of medical services to that person. I conclude that a durable power of attorney cannot be used to place someone in a nursing home but that it can be used to specifically delegate to another the ability to make medical decisions.
As you note in your request, a power of attorney simply describes the common-law relationship of principal and agent. Under the common law, the agency relationship automatically terminated when the principal died or became legally incompetent. 2A C.J.S. Agency § 135, 141 (1972). The Legislature changed that common law principle when it adopted the Durable Power of Attorney Act, section 243.07, Stats.
The power of attorney in section 243.07 is "durable" because it is not affected by the subsequent disability or incapacity of the principal. Under the common law, the question whether an attorney-in-fact could consent to medical procedures or placement in a nursing home on behalf of an incapacitated principal could never arise because the agency relationship expired upon the principal's incapacity. Because the durable power of attorney does not expire, it has been suggested that the attorney-in-fact may consent to placement in a nursing home or may approve the provision of medical services.
The Legislature created section 243.07 effective May 1, 1982. The statute adopts the Uniform Durable Power of Attorney Act passed by the National Conference of Commissioners on Uniform State Laws in 1979. The commissioners explain that the purpose of the act *Page 157 
 was to recognize a form of senility insurance comparable to that available to relatively wealthy persons who use funded, revocable trusts for persons who are unwilling or unable to transfer assets as required to establish a trust.
. . . .
 . . . The general purpose of the act is to alter common law rules that created traps for the unwary by voiding powers on the principal's incompetency or death.
Uniform Durable Power of Attorney Act (U.L.A.) prefatory note. A copy of the Uniform Act is the only document in the Legislative Reference Bureau's files on section 243.07.
The purpose in construing a statute is to ascertain and give effect to the intent of the Legislature. State v. Denter,121 Wis.2d 118, 357 N.W.2d 555 (1984). There is nothing in the legislative history of the Uniform Durable Power of Attorney Act to suggest that the Legislature at all intended either to restrict or expand the powers which could be delegated under common law. On the contrary, the clear intent was simply to allow the delegation of those powers beyond the principal's incompetency or death. Therefore, if a person could properly appoint an agent to do an act under a power of attorney, the person may properly appoint an agent to do the same act under a durable power of attorney.
"As a general rule, a person may properly appoint an agent to do the same acts and achieve the same legal consequences . . . as if he had acted personally, unless public policy . . . requires personal performance . . . ." 3 Am. Jur. 2d Agency § 20 (1986). Some actions have always been regarded as too personal to delegate to another, for example, voting, taking marriage vows, performing personal service contracts, oath taking and making wills. Note, Appointing An Agent To Make Medical TreatmentChoices, 84 Colum. L. Rev. 985, 1009 (1984). But the public policy reasons behind prohibiting the delegation of oath taking, voting or performing personal service contracts do not apply to medical decisions. Some people prefer that difficult medical decisions be made by family physicians or other family members, perhaps in the realization that those individuals will decide the best course of treatment rather than the easiest course of treatment. Indeed, when the person is incapacitated, for example, unconscious, a personal decision is impossible and the *Page 158 
physician must resort to an informal or ad hoc power of attorney by consulting with the patient's next of kin.
I conclude, therefore, that medical decisions can be delegated through a durable power of attorney. A general durable power of attorney, however, is not sufficient to delegate medical decision making. The rule is that a power of attorney must be strictly construed and that the instrument granting the power of attorney will be held to grant only those powers specified. 3 Am. Jur. 2dAgency § 31 (1986). Therefore, an instrument which simply appoints someone an attorney-in-fact, or simply grants a general power of attorney, is not sufficient to delegate medical decision making. That delegation must be specific if it is to be effective.
A delegation of authority to make medical decisions, however, cannot be construed to allow the agent to make decisions which would otherwise be controlled under chapter 880, the guardianship law, or chapter 55, Wisconsin's Protective Services Act. Section243.07(3)(b) of the Durable Power of Attorney Act permits a principal to nominate, "by a durable power of attorney, the conservator, guardian of his or her estate, or guardian of his or her person for consideration by the court if protective proceedings for the principal's person or estate are thereafter commenced." Quite clearly, the Legislature did not intend to impliedly repeal or amend chapters 55 or 880 when it adopted the Durable Power of Attorney Act. To so hold would be to conclude that the Legislature would allow agents under the durable power of attorney statute greater powers than permitted guardians under chapter 880 and permit the assumption of those powers without the procedural protections of chapter 880.
Interpreting the durable power of attorney statute to permit the attorney-in-fact to place the principal in a nursing home is inconsistent with the protective placement statutes in chapter 55. A guardian may not, on his or her own authority, place a ward in a nursing home except on a very short term basis. Sec. 55.06, Stats. The guardian must petition the court for an order for such placement unless the placement is in a home of sixteen or fewer beds or the stay is limited to three months. Sec. 55.05(5)(b), Stats. When the guardian has placed the ward in a nursing home without court order and the ward later objects, the administrator of the facility must immediately notify the county protective services agency, that agency must within seventy-two hours visit the ward, and steps *Page 159 
must be taken under section 55.05(5)(c) to have the principal released, moved to another facility or a determination must be made that the existing facility is appropriate.
The Durable Power of Attorney Act only permits the principal to nominate a guardian. If the act were interpreted as allowing the attorney-in-fact to make placement decisions, the power to nominate would be surplusage since the attorney-in-fact could make those decisions without court appointment. I must conclude, therefore, that although a durable power of attorney may include the specific authority to make medical decisions, it cannot supplant and cannot be used to avoid the requirements of chapters 880 or 55 in order to place the principal in a nursing home.
DJH:AL *Page 160